**CHAMPALE, INC., Appellant,**

v.

**JOSEPH S. PICKETT & SONS, INC., G. Heileman Brewing Company, Inc., Appellees.**

No. 78–1879.

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1979.

Decided June 5, 1979.

Q. And if Joe did not enter a plea, then there would have to be a trial on Joe?

A. Well, the Court tentatively indicated that.

Arthur March, New York City (argued), and James W. Hall and Richard C. Garberson of Shuttleworth & Ingersoll, Cedar Rapids, Iowa, on brief, for appellant.

James Van Santen of Hill, Van Santen, Steadman, Chiara & Simpson, Chicago, Ill. (argued), and Steven H. Noll, Chicago, Ill., on brief, for appellees.

Before LAY, HEANEY, and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Champale, Inc. (Champale) appeals from a summary judgment dismissing its complaint against G. Heileman Brewing Company, Inc. (Heileman) for failure to state a claim upon which relief can be granted.

On appeal Champale contends that, as a matter of law, Heileman breached an agreement with Champale when Heileman's assignee, Joseph S. Pickett & Sons, Inc. (Pickett), used the trademark "Champagne Velvet" for malt liquor. Champale alternatively asserts that the district court[1] erred in granting Heileman summary judgment because genuine issues of material fact surround Champale's breach of contract and trademark infringement claims. We affirm in part and reverse in part.

I. *Factual Background.*

In about 1971, Associated Brewing Company (Associated) and its subsidiary, Drewry's Limited U.S.A. Inc. (Drewry's), the licensee to the trademark "Champagne Velvet" for beer, began to market a malt liquor[2] under the trademark "Champagne Velvet."[3] Champale, which had used the trademarks "Champale" and "Champ" in connection with the sale of malt liquor and ale since 1939,[4] brought a trademark infringement and unfair competition suit against Associated and Drewry's in the United States District Court for the Eastern District of Michigan.

In July 1972, Heileman purchased the trademark and patent assets of Associated and Drewry's, including the license to use the trademark "Champagne Velvet." On July 10, 1973, Champale and Heileman entered into an agreement that read, in pertinent part:

WHEREAS, the parties are desirous of settling their differences with regard to the rights to use the Trademark CHAMPAGNE VELVET on Malt Liquors and to avoid joining G. HEILEMAN BREWING COMPANY as a defendant in the aforesaid action [brought by Champale against Associated and Drewry's].

NOW THEREFORE, for and in consideration of the promises and covenants herein contained, the parties have agreed as follows:

1. The G. HEILEMAN BREWING COMPANY agrees that it, its successors, assigns and licensees, will not use the Trademark CHAMPAGNE VELVET in connection with Malt Liquor and Ale.

2. CHAMPALE, INC. agrees that G. HEILEMAN BREWING COMPANY, its successors, assigns, and licensees, may use and continue to use the Trademark CHAMPAGNE VELVET in connection with Beer.

---

1. The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa.

2. Malt liquor is a malt-fermented product with a higher alcohol content than most beers.

3. The trademark "Champagne Velvet" was registered with the United States Patent Office on February 6, 1940. The original owner of the trademark, Terre Haute Brewing Company, Inc., stated in its application to the Commissioner of Patents that it had used the trademark in connection with the sale of beer, malt beverages, and liquors since 1935.

4. The trademarks "Champale," for malt liquor, and "Champ," for ale, are duly registered with the United States Patent Office. According to Champale's vice president in charge of sales, Champale Malt Liquor is unique because it "tastes more like a wine, like a bubbly champagne rather than beer taste." At this time Champale does not sell a product called "Champ," but the name "Champ" appears on the crown of each bottle of malt liquor it sells.

This agreement formed part of a "Stipulation and Order for Voluntary Dismissal," by which Champale dismissed with prejudice its action against Associated and Drewry's in the district court for the Eastern District of Michigan.

On September 30, 1974, Heileman agreed to assign its interest in several brand names, including "Champagne Velvet Beer," to Pickett, in return for a royalty on each barrel of beer sold by Pickett under those brand names.[5] Pickett initially limited its use of the trademark "Champagne Velvet" to beer. In late 1977, however, Pickett began using that trademark for a "malt beverage" in addition to the beer.

Champale brought this action against Pickett in the United States District Court for the Northern District of Iowa for trademark infringement and unfair competition. After the district court denied Champale's motion for a preliminary injunction, Champale amended its complaint to add Heileman as a defendant, charging Heileman with breach of contract, trademark infringement, and unfair competition.

The district court granted Heileman summary judgment on Champale's breach of contract claim and stated:

> The contract [between Champale and Heileman] does not require that Heileman stand as supervisor of Pickett's use of the trademark or insurer or indemnitor on behalf of Champale as to subsequent trademark misuse. Absent such express provisions, Heileman must be held harmless as a matter of law for any infringement by Pickett.

The court also dismissed Champale's trademark infringement and unfair competition claims because Heileman had not sold malt liquor under the "Champagne Velvet" trademark. The court thereupon granted final judgment to Heileman under Fed.R. Civ.P. 54(b), and this timely appeal followed. Champale's claims against Pickett remain pending in the district court.

**5.** Pickett agreed to pay Heileman $1 for each barrel of the brand name beers it sold until December 31, 1985, with a maximum payment of $20,000 per year. Heileman's license expires on December 31, 1985.

## II. *Discussion.*

Fed.R.Civ.P. 56(c) states that summary judgment may be granted only "if the pleadings * * * together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The drastic nature of the summary judgment remedy imposes upon a defendant who seeks it the burden of establishing, with such clarity as to leave no room for controversy, that the plaintiff is not entitled to recover under any discernible circumstances. *Williams v. Evangelical Retirement Homes of Greater St. Louis,* 594 F.2d 701, 703 (8th Cir. 1979); *Butler v. MFA Life Ins. Co.,* 591 F.2d 448, 451 (8th Cir. 1979); *Goodman v. Parwatikar,* 570 F.2d 801, 803 (8th Cir. 1978). The material presented by the moving party must be viewed in the light most favorable to the party opposing the summary judgment motion. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Applying these standards to the breach of contract claim, we cannot say that Heileman has demonstrated that there is no genuine issue as to any material fact. Although "[d]isputes involving the interpretation of unambiguous contracts are appropriate cases for summary judgment[,]" *Parish v. Howard,* 459 F.2d 616, 618 (8th Cir. 1972), the disputed language in this case is not free from ambiguity. A contract is ambiguous if it is reasonably susceptible of more than one construction. *Universal Towing Co. v. United Barge Co.,* 579 F.2d 1098, 1101 (8th Cir. 1978); *Sun Oil Co. v. Vickers Refining Co.,* 414 F.2d 383, 386 (8th Cir. 1969). Read in the context of the entire contract, Heileman's promise that "it, its successors, assigns, and licensees, will not use the Trademark CHAMPAGNE VELVET in connection with Malt Liquor and Ale" is susceptible of at least two constructions. On the one hand, Champale contends the agreement obligates Heileman

to ensure that not only it, but also its successors, assigns, and licensees, forego using the trademark in connection with malt liquor and ale.[6]  On the other hand, Heileman maintains that the contract imposed no duty on it to police the actions of an independent third party, such as Pickett.

This dispute cannot properly be resolved on the present state of the record.  Therefore, we reverse the judgment as to the breach of contract claim and remand the case for a ventilation of the circumstances surrounding the making of the contract in a plenary hearing so that the district court may determine the appropriate construction of the contract clause here in question.

The only other issue on appeal concerns whether the district court erred in granting summary judgment against Champale on its claim that Heileman infringed Champale's "Champagne Velvet" trademark when Pickett, Heileman's assignee, used the trademark with Heileman's knowledge and paid royalties to Heileman. Champale cites no authority supporting such an indirect infringement claim, and our research discloses none.  Therefore, we affirm the grant of summary judgment dismissing the trademark infringement claim against Heileman.[7]

Accordingly, we affirm in part, reverse in part, and remand for further proceedings in conformity with this opinion.  Each party shall pay its own costs on appeal.

6. Champale's former executive vice president, Bailey Nieder, who negotiated and signed the agreement on behalf of Champale, submitted to the district court an affidavit in which he stated that the parties to the agreement understood that the disputed language imposed upon Heileman "affirmative obligations to notify and prohibit its successors, assigns and licensees from using the words CHAMPAGNE VELVET in connection with the malt liquor * * *."

We note, however, that the affidavit recites conclusions, not facts.  As such, the affidavit is not helpful in resolving the controversy, although it illustrates the nature of the dispute. When Heileman assigned its rights in the "Champagne Velvet" trademark to Pickett, the assignment agreement failed to mention the Champale agreement or to prohibit the use of the trademark for malt liquor.

7. Because Champale's briefs do not question the grant of summary judgment as to the unfair competition claims, we deem the issue waived and also affirm on that issue.