648 F.2d 612
 107 L.R.R.M. (BNA) 3179, 91 Lab.Cas. P 12,863
 Rafael CASTANEDA, Pedro Valencia, Antonio Ochoa, John
Rodelo, Raymond Herrera, Plaintiffs/Appellants,
v.
DURA-VENT CORPORATION, a California corporation, Sheet Metal
Workers, Local 355, an unincorporated association,
Defendants/Appellees.
 No. 78-3638.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 16, 1980.
Decided June 5, 1981.
Rehearing and Rehearing En Banc Denied July 31, 1981.
 
 Martin Eichner, Romines & Eichner, Palo Alto, Cal., for plaintiffs/appellants.
 Richard Harrington, Athearn, Chandler & Hoffman, David Rosenfeld, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for defendants/appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before ANDERSON and NELSON, Circuit Judges, and KARLTON,* District Judge.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 Appellants are, or were, employees of the Dura-Vent Corporation (Dura-Vent) and members of Sheet Metal Workers Local 355 (the Union). Appellants' complaint alleged that Dura-Vent breached provisions of the 1975-1978 and 1977-1981 collective bargaining agreements, and that Dura-Vent coerced the ratification of the 1977-1981 collective bargaining agreement. They also alleged that the Union violated its duty of fair representation.
 
 
 2
 Summary judgment was granted to the defendants, the Union and Dura-Vent, and appellants appeal. We affirm in part and reverse in part and remand.
 
 I. MOOTNESS OF APPEAL
 
 3
 The Union and Dura-Vent, after oral argument, have suggested that the appeal has become moot. They state that petitions have been filed with the National Labor Relations Board by two unions, the United Electrical, Radio & Machine Workers of America, and the Progressive Machine Workers Union, to replace the Union as the authorized bargaining representative of the employees at Dura-Vent. They contend that the only remedy appellants seek is to set aside the 1977-1981 collective bargaining agreement and have the Union and Dura-Vent negotiate a new contract. They argue that if a new union is elected, Dura-Vent will be obligated to bargain with the new union exclusively and any action by this court will have no effect upon the certification of the new union by the Board.
 
 
 4
 The filing of the petitions by the two unions has not rendered this appeal moot. The complaint seeks more relief than merely the setting aside of the 1977-1981 contract. The complaint alleges violations of both the 1975-1978 and 1977-1981 contracts. There are various claims for monetary damages due to the conduct of Dura-Vent and the Union. Thus even if a new union is elected, the appeal will not be rendered moot. See Bartenders & Culinary Workers v. Howard Johnson Co., 535 F.2d 1160, 1162 n.3 (9th Cir. 1976).
 
 II. JURISDICTION
 
 5
 There is no question that the district court had jurisdiction pursuant to section 301 of the National Labor Relations Act, 29 U.S.C. § 185, over the various allegations concerning breaches by Dura-Vent of the 1975-1978 and 1977-1981 collective bargaining agreement and over the allegations that the Union breached its duty of fair representation in the handling and processing of those claims. See Vaca v. Sipes, 386 U.S. 171, 186-188, 87 S.Ct. 903, 914-916, 17 L.Ed.2d 842 (1967). And, the independent claims of breach of duty of fair representation against the Union, including the breach of duty of fair representation in negotiating the 1977-1981 agreement, and in collecting excessive amounts of initiation fees were cognizable under 28 U.S.C. § 1337. Beriault v. Local 40, Super Cargoes & Checkers of I. L. & W. U., 501 F.2d 258, 264 (9th Cir. 1974); Retana v. Apartment, Motel, Hotel & Elevator Operators Union, 453 F.2d 1018, 1021-1022 (9th Cir. 1972).
 
 
 6
 However, whether the district court had jurisdiction to consider the claim that Dura-Vent had coerced the employees into ratifying the 1977-1981 contract is a more difficult question. But, we agree with the district court that the claim essentially alleged that Dura-Vent had committed unfair labor practices and thus the National Labor Relations Board had exclusive jurisdiction over the claim.
 
 
 7
 As stated in San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the general rule is that "(w)hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board " Id. at 245, 79 S.Ct. at 780. This rule, however, "(does) not preempt a court's jurisdiction over a section 301 action for a breach of contract that was also an unfair labor practice."[1] Waggoner v. R. McGray, Inc., 607 F.2d 1229, 1234 (9th Cir. 1979). In that situation, the NLRB and the courts have concurrent jurisdiction over the action. See Motor Coach Employees v. Lockridge, 403 U.S. 274, 298, 91 S.Ct. 1909, 1923, 29 L.Ed.2d 473 (1971); Orange Belt District, etc. v. Maloney Specialties, 639 F.2d 487 (9th Cir. 1980). However, jurisdiction exists under section 301 only to the extent that the dispute is focused upon and governed by the terms of the collective bargaining agreement. Motor Coach Employees v. Lockridge, 403 U.S. at 300-301, 91 S.Ct. at 1924-1925; Waggoner v. R. McGray, 607 F.2d at 1235. Thus where a claim or defense necessitates a determination of whether an unfair labor practice has been committed as opposed to a contract-type determination, section 301 provides no basis for a court's jurisdiction over the claim. Cf., Waggoner v. R. McGray, Inc. (the fact that a contract clause may be a violation of section 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e) may not be raised as a defense to a breach of contract claim); Atchison Topeka & Santa Fe Railway Co. v. Locals No. 70, 85 and 315, etc., 511 F.2d 1193 (9th Cir. 1975) (the identification and remedy of a contract provision that constituted an unfair labor practice was exclusively within the jurisdiction of the NLRB); West Coast Tel. Co. v. Local U., 431 F.2d 1219 (9th Cir. 1970) (although there may have been a possible avenue of relief through the NLRB, jurisdiction existed under section 301 to reform the contract which inaccurately reflected the agreement reached by the parties).
 
 
 8
 Here, the appellants alleged that Dura-Vent coerced the ratification of the 1977-1981 agreement by laying off employees to prevent them from participating in the ratification of the proposed agreement, by threatening to immediately discharge all employees if the agreement was not ratified, and by forcing the employees to vote on the ratification of the agreement in a short period of time. Although the claim was not couched in terms of unfair labor practices, "(i)t is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern." Motor Coach Employees v. Lockridge, 403 U.S. at 292, 91 S.Ct. at 1920. In this case, the resolution of appellants' allegations would have required determinations of whether unfair labor practices had occurred: whether Dura-Vent had interfered with, restrained or coerced employees in the exercise of their section 7 rights, 29 U.S.C. § 158(a)(1), or whether Dura-Vent had refused to bargain in good faith, 29 U.S.C. § 158(a)(5). These unfair labor practice claims were within the Board's exclusive jurisdiction.
 
 III. STANDARD OF REVIEW
 
 9
 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). On appeal, all possible inferences from the record must be drawn in favor of the non-moving party. Gee v. Tenneco, Inc., 615 F.2d 857, 859 (9th Cir. 1980).
 
 
 10
 The party opposing the motion may not rest upon the allegations of its pleadings when an adequately-supported motion for summary judgment is presented. Turner v. Local Union No. 302, Int'l Broth. of Teamsters, 604 F.2d 1219, 1228 (9th Cir. 1979). The opposing party must come forward and expose the existence of genuine issues for trial; mere conclusory allegations will not suffice. Id.
 
 
 11
 "However, when the material submitted by the moving party is insufficient or demonstrates on its face issues of material fact, the non-moving party need not file any affidavits or other supporting material. See, e. g., Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Sherman v. British Leyland Motors, Ltd., 601 F.2d 429, 439 (9th Cir. 1979)."
 
 
 12
 Gee v. Tenneco, 615 F.2d at 859.
 
 IV. DISCUSSION
 
 13
 Appellants alleged that Dura-Vent breached provisions of the 1975-1978 and the 1977-1981 collective bargaining contracts. On many of the contract claims, the district court granted summary judgment because it determined that no genuine issue had been raised to indicate that appellants had exhausted the contractual grievance procedures. In connection with this determination, the district court also ruled that the appellants had not shown that the Union had breached its duty of fair representation in handling and processing the grievances such that they should be excused from having to exhaust the grievance procedures.
 
 
 14
 Because the breach of contract claims are so intertwined with the issue of the Union's breach of duty of fair representation, we shall first consider the Union's breach of duty of fair representation in relation to the exhaustion of the grievance procedures, then we shall review the individual contract claims. Following that discussion, we shall consider the Union's breach of duty of fair representation as an independent cause of action.
 
 A. Failure to Exhaust Grievance Procedures
 
 15
 While employees may sue their employer for breach of a collective bargaining contract pursuant to section 301, employees must attempt to exhaust the contractual grievance procedures before seeking judicial relief. Kaylor v. Crown Zellerbach, Inc., 643 F.2d 1362, 1365-1366 (9th Cir. 1981); Beriault v. Local 40, Super Cargoes & Checkers of the I. L. W. U., 501 F.2d at 262. However, there are exceptions to the exhaustion requirement. Vaca v. Sipes, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); Beriault, 501 F.2d at 262. An employee may bring an action against his employer for breach of contract, even where the employee has failed to exhaust contractual grievance procedures, if he can show that the union breached its duty of fair representation. Vaca v. Sipes, 386 U.S. at 185-186, 87 S.Ct. at 914-915; Retana v. Apartment, Motel, Hotel and Elevator Operators Union, 453 F.2d at 1026. Examples where this exception would apply are where the grievance process fundamentally malfunctions because of the manner in which the union has handled the grievance, see Hines v. Anchor Motor Freight, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), or where a union's conduct in processing, or its failure to process, grievances has made it futile to try to exhaust grievance procedures. See Glover v. St. Louis-San Francisco R. Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); Retana, supra.
 
 
 16
 After reviewing the record, we agree with the district court that appellants have not made a showing that they exhausted the contractual grievance procedures. However, appellants really do not contend to the contrary. They contend that their efforts to obtain the Union's assistance in processing their grievances were repeatedly ignored and, because of the lack of Union support, many employees were fearful of retaliatory discharges if they complained. Their main thrust on appeal is that the Union breached its duty of fair representation in handling and processing their grievances. And, as to this issue, we agree with the appellants that summary judgment was not appropriate.
 
 
 17
 The record on appeal indicates that the district court erred in concluding that no genuine issue of material fact existed concerning the Union's breach of its duty of fair representation in handling and processing grievances. The record contains little, if any, support for this conclusion. The lack of support in the record for appellees' position on this issue requires the reversal and remand of the summary judgments on the breach of contract claims which were granted because of the failure to exhaust grievance procedures. See Sherman v. British Leyland Motors, Ltd., 601 F.2d 429, 439 (9th Cir. 1979).
 
 
 18
 We need not, and do not, decide whether the declarations provided by the appellants would have survived a properly-supported motion for summary judgment. However, we believe a brief statement as to the controlling law is appropriate. A union breaches its duty of fair representation when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." Vaca v. Sipes, 386 U.S. at 190, 87 S.Ct. at 916; Robesky v. Quantas Empire Airways, Ltd., 573 F.2d 1082, 1086 (9th Cir. 1978). A union's actions are arbitrary or discriminatory where it ignores or perfunctorily handles employee grievances or where its acts or omissions reflect reckless disregard for the rights of the individual employee. Robesky, 573 F.2d at 1089-1090. No one incident or piece of evidence may be sufficient to demonstrate that a union's conduct was "arbitrary, discriminatory or in bad faith." However, taken as a whole, the evidence may describe a pattern of conduct on the part of the union which shows that it breached its duty of fair representation in handling or processing employee grievances. See Hughes v. Int'l Broth. of Teamsters Local 683, 554 F.2d 365, 367-368 (9th Cir. 1977).
 
 
 19
 On remand, the district court should consider each breach of contract claim separately in determining whether an employee's failure to exhaust the grievance procedures was excused by a breach of duty of fair representation on the part of the Union. However, it should keep the totality of the circumstances in mind in reviewing each case.
 
 B. Contract Claims
 1. Cost of Living
 
 20
 Appellants alleged that Dura-Vent breached the terms of the 1975-1978 contract by failing to pay certain cost of living increases. They also alleged the Union breached its duty of fair representation because it took the Union almost six months to process the claim.
 
 
 21
 After the filing of the present action, the cost of living issue was taken to arbitration by the Union. The arbitrator's decision was rendered on October 25, 1978, subsequent to the district court's summary judgment of September 20, 1978.
 
 
 22
 In granting summary judgment, the district court ruled that it would be premature to decide the cost of living issue prior to the arbitrator's decision or, if the arbitrator had already rendered its decision, that it should defer to the arbitrator's decision. And, since the appellants had not contended that the arbitration proceeding had been handled in an unfair manner by the Union, the district court determined that their claim against Dura-Vent was barred by the policy favoring the resolution of industrial disputes by arbitration.
 
 
 23
 The parties selected arbitration, through their collective bargaining agreement, as the means by which contract disputes would be settled and courts should not disrupt such awards, see Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976), "except on the grounds of fraud, deceit or breach of the duty of fair representation or unless the grievance procedure was a 'sham, substantially inadequate or substantially unavailable.' " Andrus v. Convoy Co., 480 F.2d 604, 606 (9th Cir. 1973), quoting Harris v. Chemical Leaman Tank Lines, Inc., 437 F.2d 167, 171 (5th Cir. 1971). Even though the appellants have raised an issue concerning the Union's dilatoriness in processing the grievance, the fact remains that the cost of living claim did go to arbitration.[2] The appellants do not contend that the arbitration proceeding was a sham or that the Union's handling of the arbitration case was unfair. The district court was correct in deferring to the arbitration process and its grant of summary judgment on this issue is affirmed.
 
 
 24
 2. Discipline of Employees Without the Presence of Union Stewards
 
 
 25
 Appellants alleged that the 1975-1978 agreement required the presence of a union steward in disciplinary proceedings. The district court ruled that the appellants had failed to show that such a requirement was provided in the contract and that the two sections mentioned by the appellants did not impose such a requirement. The district court also ruled that the appellants had not shown that they had exhausted the contractual grievance procedures.
 
 
 26
 On the basis of our prior discussion, section IV.A., supra, summary judgment should not have been granted for failure to exhaust the contract grievance procedures.
 
 
 27
 In contract cases, summary judgment is appropriate only if the contract or the contract provision in question is unambiguous. Bear Brand Hosiery Co. v. Tights, Inc., 605 F.2d 723, 726 (4th Cir. 1979); Champale, Inc. v. Joseph S. Pickett & Sons, Inc., 599 F.2d 857, 859 (8th Cir. 1979). A contract or a provision of a contract is ambiguous if it is reasonably susceptible of more than one construction or interpretation. Bear Brand and Champale, supra.
 
 
 28
 Article XI, Section 1 of the 1975-1978 contract states that:
 
 
 29
 "The aggrieved employee shall first discuss his grievance with his Supervisor. If he fails to receive satisfaction from the Supervisor in this discussion, the aggrieved employee shall discuss his grievance with his Supervisor in the presence of the Shop Steward. If his grievance is not resolved, he shall then submit his grievance in writing to his Shop Steward not later than three (3) working days after the occurrence prompted the filing of the grievance. The Shop Steward will then immediately take the matter up with the Supervisor for settlement."
 
 
 30
 We cannot say that this contract provision is unambiguous. The provision requires that after the initial discussion with his supervisor fails to resolve the grievance, an employee shall discuss his grievance with the supervisor in the presence of the shop steward. Although this provision alone may not mandate the presence of the shop steward at all disciplinary proceedings, read in conjunction with the rest of the grievance procedures it appears that an employee will continue to have some type of union representation after the initial discussion with the supervisor. By our discussion we merely attempt to point out that the contract is ambiguous on this issue and therefore the intent of the parties must be determined. The parties' intent is a triable issue of fact; thus summary judgment should not have been granted. Bear Brand, supra.
 
 3. Recall and Seniority
 
 31
 The complaint alleges that Dura-Vent violated the Recall and Seniority provisions of the 1975-1978 contract when it rehired employees without their seniority, and at lower wage rates. The district court did not consider this issue because it found that the contract grievance procedures had not been exhausted. Our prior ruling on the exhaustion of grievance procedures requires that this issue be remanded to the district court.
 
 
 32
 The complaint also alleges that the Recall and Seniority provisions were violated specifically in the case of John Rodelo. Rodelo was the shop steward for the night shift at the time the entire night shift was terminated. He contends that Article XII of the 1975-1978 contract accorded him "super-seniority" because of his status as the shop steward. Therefore, he claims that he should have been allowed to transfer to the day shift ahead of any other night shift worker.
 
 
 33
 Rodelo's claim was taken through the grievance process through conciliation with the State Conciliation service. Rodelo's claim was rejected in the conciliation proceeding. Though the recommendation of the conciliation was not binding on the parties, the Union decided not to proceed to arbitration.
 
 
 34
 An individual employee does not have an absolute right to have his grievance proceed to arbitration. Vaca v. Sipes, 386 U.S. 191, 87 S.Ct. 917. As long as a union does not act arbitrarily, discriminatorily, or in bad faith in exercising its discretion in not proceeding to arbitration, that decision will not be considered a breach of duty of fair representation. See Vaca v. Sipes, 386 U.S. at 192-193, 87 S.Ct. at 917-918. There was no allegation that in refusing to proceed to arbitration the Union breached its duty of fair representation. Thus we agree with the district court that judicial intervention was not warranted.
 
 
 35
 Rodelo also claimed that he was not rehired for the night shift. Since the basis for the district court's grant of summary judgment on this claim was that Rodelo had not exhausted the contract grievance procedures, we remand this issue to the district court.
 
 4. Termination of Herrera
 
 36
 Appellant Herrera alleged that Dura-Vent violated the terms of the 1977-1981 agreement by firing him solely because of his union activity. Article XII, Section 2, of the agreement states that no member of the Union shall be discriminated against by the employer for engaging in union activities. Without reaching the merits of Herrera's claim, the district court granted summary judgment because it concluded that Herrera had not shown that he had exhausted the contractual grievance procedures.
 
 
 37
 Appellant does not argue that he complied with the various steps of the grievance procedure; in fact, it is conceded that the grievance was filed late. However, Herrera argues that the Union nevertheless processed the grievance and a meeting with Dura-Vent was arranged to discuss a resolution of the grievance. Herrera's declaration states that the Union representatives, Corvello and Jacques, had been in contact with Dura-Vent and were apparently working out a settlement of two weeks' pay. However, the declaration states that when Dura-Vent found out that he had continued his Union activities,[3] he was told by the Union representatives that Dura-Vent refused to further consider the grievance. Herrera stated that he heard no more from the Union regarding the grievance.[4]
 
 
 38
 We believe that summary judgment should not have been granted. Genuine issues of material fact are raised concerning whether Dura-Vent had waived the late filing of the grievance and whether Dura-Vent and the Union were working out a settlement of the claim until it was discovered that Herrera was continuing his union activities. A question is also raised as to whether the Union breached its duty of fair representation by failing to pursue a resolution of the grievance. Under these circumstances, the granting of summary judgment on Herrera's claim was erroneous.
 
 5. Failure to Pay Wage Increases
 
 39
 Appellants alleged that Dura-Vent breached the terms of the 1977-1981 agreement by failing to pay the periodic wage increases due under its terms. The district court granted summary judgment because there was no indication that the grievance procedures had been exhausted. We remand this issue to the district court on the basis of our prior discussion on the exhaustion requirement.
 
 C. Breach of Duty of Fair Representation
 
 40
 Appellants alleged that the Union breached its duty of fair representation. We have already reversed and remanded the issue of the Union's breach of duty regarding the handling and processing of grievances because there was no support in the record for a grant of summary judgment to the appellees on this issue. We reach the same conclusion regarding the other allegations concerning the Union's breach of duty of fair representation which include the breach of duty of fair representation in negotiating the 1977-1981 agreement, and in collecting excessive amounts of initiation fees. Again, the record does not support a grant of summary judgment on this issue.
 
 D. Discovery
 
 41
 Appellants finally contend that the grant of summary judgment as a whole was improper as the district court did not allow appellants an opportunity for discovery prior to the ruling. In light of our previous rulings, we need not determine whether a continuance should have been allowed. The matters upon which appellants sought discovery concerned issues which we have either remanded or disposed of in this appeal. If any error was committed by the district court, appellants were not prejudiced by it.
 
 V. CONCLUSION
 
 42
 The judgment of the district court is AFFIRMED in part and REVERSED in part and REMANDED for further proceedings.
 
 
 
 *
 The Honorable Lawrence K. Karlton, United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 The fact that the claim does not allege a violation of the collective bargaining agreement does not automatically take it out of the scope of Section 301. Section 301 is not restricted to suits for damages or specific performance. Black-Clawson Co., Inc. v. International Ass'n of Machinists, 313 F.2d 179, 181-182 (2d Cir. 1962); Cf. West Coast Tel. Co. v. Local U., 9th Cir., 431 F.2d 1219 (complaint did not allege breach of contract, but rather merely sought to have the court reform the contract to accurately reflect the agreement reached between the parties). Parties may seek declarations of their rights under collective bargaining agreements. See Kodiak Oil Field Haulers v. Teamsters, 611 F.2d 1286, 1290 (9th Cir. 1980). Here, appellants' complaint appropriately sought declaratory relief regarding the rights of the parties in relation to the 1977-1981 collective bargaining agreement
 
 
 [2]
 Appellants contend that the Union did not take the claim into consideration until the filing of this suit and until a deauthorization election was held by the National Labor Relations Board. While these contentions do not affect the validity of the arbitration award, they could provide some support for the claim that the Union breached its duty of fair representation in handling and processing employee grievances
 
 
 [3]
 The union activities Herrera participated in involved soliciting support to withdraw the authority of the Union to require that membership be a condition of employment
 
 
 [4]
 The Union in its brief confirms Herrera's declaration concerning the events