937 F.2d 613
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 NATIONAL REINSURANCE CORPORATION, Plaintiff-Appellant,
v.
TRANSPORT INSURANCE COMPANY, Transport Indemnity Company,
Mission Insurance Company, Mission Insurance Group, Inc.,
American Financial Corporation, Great American Insurance
Company, Defendants-Appellees.
 No. 90-55148.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 2, 1991.
Decided July 8, 1991.
 Before WILLIAM A NORRIS, CYNTHIA HOLCOMB HALL and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 National Reinsurance Corporation appeals the district court's order granting the Transport defendants' motion to confirm a settlement agreement. At issue is whether the Transport defendants agreed in the settlement agreement to indemnify National Reinsurance on its obligations to Associated Insurance Corporation stemming from four treaties that were listed in the settlement. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and we affirm.
 
 
 3
 * In 1976, National Reinsurance began providing reinsurance to Transport Indemnity Company. Among the treaties entered into between National Reinsurance and Transport in the late 1970's were four treaties between National Reinsurance and "Transport and/or Associated" (the "Transport/Associated" treaties). In 1988, National Reinsurance and the Transport defendants signed the settlement agreement that is at issue. Although the settlement included the Transport/Associated treaties, Associated was not a party to the agreement.
 
 
 4
 Soon after the settlement, Associated submitted claims to National Reinsurance based upon the Transport/Associated treaties. National Reinsurance contends that the Transport defendants agreed in the settlement to indemnify it on these claims. The district court disagreed, finding that the settlement only covered claims submitted by Transport Indemnity and the other parties to the settlement. National Reinsurance timely appealed.
 
 II
 
 5
 The district court examined the language of the settlement agreement and found it to be unambiguous. The court concluded that National Reinsurance's contention that the Transport defendants had agreed to indemnify it was not supported by the language of the settlement agreement.
 
 
 6
 We construe a settlement agreement in the same manner as a contract. Miller v. Fairchild Indus., 797 F.2d 727, 733 (9th Cir.1986). "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal.Civ.Code Sec. 1638 (West 1985).[1] Where the contract is unambiguous, no extrinsic evidence is admissible to contradict its meaning. Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450, 827 F.2d 1324, 1327 (9th Cir.1987). We review de novo a district court's decision that is based on an analysis of contractual language. Kern Oil & Refining Co. v. Tenneco Oil Co., 840 F.2d 730, 736 (9th Cir.), cert. denied, 488 U.S. 948 (1988).
 
 
 7
 We agree with Judge Keller that the language of the contract supports the Transport defendants' position. The agreement was called a "mutual release." Although National Reinsurance claims that the Transport defendants agreed to indemnify it, the only explicit mention of indemnification is in the portion of the settlement agreement covering assignment and is not applicable to the case at hand.[2] As Judge Keller noted, "[t]he construction of the settlement agreement that plaintiff urges upon this Court is not one that would be difficult to express in clear, explicit language."
 
 
 8
 The Transport defendants argue the National Reinsurance is reading too much into the settlement agreement's reference to the Transport/Associated treaties. According to the Transport defendants, the use of "and/or" in those treaties signified joint and several obligations. In the settlement agreement, say the Transport defendants, they released only those obligations over which they had control--National Reinsurance's obligations to Transport Indemnity. They did not, and could not, release National Reinsurance's separate obligations to Associated.
 
 
 9
 Although we find the Transport defendants' interpretation of the settlement agreement to be reasonable, we cannot say that the agreement is unambiguous. In the settlement, the Transport defendants agreed to "forgive, release and forever discharge National [Reinsurance] from any and all past and present claims, debts, obligations and liabilities, in any way connected with or arising out of" the four Transport/Associated treaties. According to National Reinsurance, the use of the language "forever discharge" indicates the Transport defendants' agreement to indemnify National Reinsurance on its obligations to Associated from these treaties. The Transport defendants counter that this language is merely boilerplate and has no special meaning.
 
 
 10
 When a contract term is reasonably susceptible to more than one interpretation, it is ambiguous. Castaneda v. Dura-Vent Corp., 648 F.2d 612, 619 (9th Cir.1981). Here, both interpretations of "forever discharge" are possible. We therefore disagree with the district court's conclusion that the language of the settlement agreement unambiguously supports the Transport defendants' position.
 
 III
 
 11
 Although the district court found the settlement agreement to be unambiguous, it also examined extrinsic evidence, concluding that the intent of the parties was to effect a release and not an assumption. Where contractual language is ambiguous, the circumstances surrounding the execution of the contract are properly considered in order to determine the parties' intent. Pierce County Hotel Employees, 827 F.2d at 1327. We review this examination for clear error. Kern Oil, 840 F.2d at 736; L.K. Comstock & Co. v. United Eng'rs & Constructors, Inc., 880 F.2d 219, 221 (9th Cir.1989).
 
 
 12
 Judge Keller noted that in circulating a draft settlement agreement, National Reinsurance specifically requested in writing that the definition of "Transport LA" in the settlement agreement (which included Transport Indemnity Company) also include Associated, as well as Compac Insurance, a wholly owned subsidiary of Transport Indemnity. The Transport defendants agreed to include Compac; but they explained to National Reinsurance that because Transport Indemnity no longer had any relationship with Associated, "at this time it does not appear feasible to include [Associated] in this release."Although National Reinsurance now claims that this correspondence merely reflected its request to "formalize the operation of the Settlement Agreement," the district court found otherwise. It concluded that both National Reinsurance's request and the Transport defendants' response were inconsistent with National Reinsurance's reading of the settlement agreement. If the Transport defendants had agreed to indemnify National Reinsurance, then there was no need to include Associated as a party to the agreement.
 
 
 13
 In addition, the district court found that the parties initially considered a commutation agreement, which by definition would have included an assumption of National Reinsurance's obligations, see National Union Fire Ins. Co. v. Walton Ins., 696 F.Supp. 897, 898 (S.D.N.Y.1988), but abandoned this resolution in favor of a mutual release. The court concluded that the intent of the parties was to effect a mutual release and that the Transport defendants never agreed to indemnify National Reinsurance on Associated's claims stemming from the Transport/Associated treaties. This conclusion is not clearly erroneous.
 
 
 14
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The settlement agreement provides that it "shall in all respects by interpreted, enforced and governed" by California law. Settlement Agreement, Section X
 
 
 [2]
 In section IX, the parties agreed that any party responsible for a "transfer, assignment or subrogation" of a treaty would "indemnify and hold the other parties free and harmless from and against any such claim...." This section is not applicable here because Transport Indemnity did not assign the Transport/Associated treaties to Associated. Associated was an original party to these treaties
 National Reinsurance claims that the last sentence of section IX, which reads "Nothing whatsoever in this paragraph shall prevent the DEFENDANTS from substituting in National [Reinsurance's] place another reinsurer or reinsurers with respect to the treaties," is proof that the Transport defendants had accepted full responsibility for the treaties. The district court found this reading to be "at best, tortured." We agree. Rather than assuming that this sentence signifies an implicit agreement by the Transport defendants to assume National Reinsurance's obligations to Associated, we read this sentence as merely refering to any obligations of National Reinsurance directly to Transport Indemnity, which had been expressly released in section III of the agreement.